### UNITED STATES v. HERMANN BOKER & CO.

(Circuit Court of Appeals, Second Circuit. January 11, 1910.)

No. 108 (4,472).

CUSTOMS DUTIES (§ 26*)—CLASSIFICATION—NICKEL-COATED WIRE—"COATED WITH METAL."

In Tariff Act July 24, 1897, c. 11, § 1, Schedule C, par. 137, 30 Stat. 161 (U. S. Comp. St. 1901, p. 1639), the provision for wire "coated with * * * metal" includes an article produced by pushing a steel or iron rod through a nickel tube and then wire-drawing the whole, thus bringing it down to the required diameter, and welding the nickel to the core. It makes no difference whether the coating referred to is affixed by welding, dipping, electrolysis, or otherwise.

[Ed. Note.—For other cases, see Customs Duties, Dec. Dig. § 26.*]

Appeal from the Circuit Court of the United States for the Southern District of New York.

This cause comes here upon appeal from a decision (168 Fed. 464) of the Circuit Court, Southern District of New York, reversing a de-

---

cision of the Board of General Appraisers (G. A. 6,411, T. D. 27,544), which affirmed the action of the collector of the port of New York in assessing duty on certain wire.

D. Frank Lloyd, Deputy Asst. Atty. Gen. (Martin T. Baldwin, Sp. Atty., of counsel), for the United States.

Walden & Webster (Howard T. Walden, of counsel), for importers.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge.   The process of manufacture is as follows: A steel or iron rod or wire is pushed through a nickel tube, and the whole is then wire-drawn, which brings it down to the required diameter and welds the nickel to the iron or steel. The result is a core of iron or steel wire with an outer surfacing of nickel permanently affixed thereto. The relevant paragraph in the tariff act of 1897 (Act July 24, 1897, c. 11, § 1, Schedule C, par. 137, 30 Stat. 161 [U. S. Comp. St. 1901, p. 1639]) is:

"137. Round iron or steel wire, not smaller than number thirteen wire gauge, one and one-fourth cents per pound; smaller than number thirteen and not smaller than number sixteen wire gauge, one and one-half cents per pound; smaller than number sixteen wire gauge, two cents per pound: Provided, that all the foregoing valued at more than four cents per pound shall pay forty per centum ad valorem. Iron or steel or other wire not specially provided for in this act, including such as is commonly known as hat wire, or bonnet wire, crinoline wire, corset wire, needle wire, piano wire, clock wire, and watch wire, whether flat or otherwise, and corset clasps, corset steels and dress steels, and sheet steel in strips, twenty-five one-thousandths of an inch thick or thinner, any of the foregoing, whether uncovered or covered with cotton, silk, metal, or other material, valued at more than four cents per pound, forty-five per centum ad valorem: Provided, that articles manufactured from iron, steel, brass, or copper wire, shall pay the rate of duty imposed upon the wire used in the manufacture of such articles, and in addition thereto one and one-fourth cents per pound, except that wire rope and wire strand shall pay the maximum rate of duty which would be imposed 'upon any wire used in the manufacture thereof, and in addition thereto one cent per pound; and on iron or steel wire coated with zinc, tin, or any other metal, two-tenths of one cent per pound in addition to the rate imposed on the wire from which it is made."

It will be perceived that by this paragraph one rate of duty is imposed on (1) "iron or steel or other wire, not specially provided for * * * whether uncovered or covered with * * * metal," and a different rate of duty on (2) "iron or steel wire coated with * * * any * * * metal." The collector assessed this wire under the first of these categories; the importer contends it belongs under the second. The use of the words "not specially provided for" in connection only with the first of these categories would seem to indicate that the correct interpretation of the paragraph is: Such and such a duty shall be laid upon all iron or steel wire, which is covered with cotton, silk, metal, or other material; but, if such wire is coated with zinc, tin, or any other metal, it shall pay at a different rate.

It is not controlling, therefore, that the iron or steel wire is found to be *covered* with metal, if such metal covering can fairly be held to be a *coating*. The covering of many of the varieties of wire which are enumerated in the first category—hat wire, bonnet wire, crinoline wire, corset wire, piano wire—is not the sort that one could properly

call a coating. On the contrary, unless some peculiar and unusual meaning be given to the words "coated with metal," it is difficult to conceive of any article which more aptly illustrates them than the wire now before us. We agree with Judge Holt that it makes no difference by what process the coating is affixed—by welding, by dipping, by electrolytic action, or in any other way. The act refers only to the finished product.

It is further contended that this is not an iron or steel wire coated with nickel, but is really a nickel wire containing iron or steel. Examination of the sample "Illustrative Exhibit 1," where the relative quantities and the disposition of the two metals are clearly displayed, is sufficient to dispose of this suggestion. The other sample is of so small a gauge that the end, which has been pinched off rather than cut off, does not show the line where the two metals come together; but, as the smaller is drawn down from the larger, it may, in the absence of proof to the contrary, be assumed that the relative proportions are the same.

The decision is affirmed.